## NATHANIEL LORING *versus* ELLIS SUMNER, Executor &c.

If a promissory note be founded upon two distinct considerations, one of which is valid and the other not, it may be apportioned, and enforced *so far only as it is* founded on the valid consideration. And if the considerations are not respectively liquidated and definite, the jury are to determine how much of the note is founded on the valid consideration.

Where a promissory note for the sum of $ 1000, payable out of the estate of the promisor in one year after his death, was given by the promisor to his son, solely in consideration of his releasing his interest in the promisor's estate, it was *held*, that such note was invalid, as not being founded on a sufficient legal consideration.

The promisor, in such case, subsequently executed his will, containing the following clauses : " I have given to my son [the promisee] $ 1000 by note, for his full part of my estate." " I also order my executor to pay all the legacies above named, in one year after my death." " I see fit to dispose of my estate as mentioned in the above will." It was *held*, that the clause relating to the son constituted a valid legacy to him of the sum mentioned therein, although the note itself was invalid.

ASSUMPSIT. The declaration contained counts on a promissory note made by the defendant's testator, and on an alleged legacy in his will.

The action was tried before *Wilde* J.

The promissory note declared on, was in the following words :

" Hopkinton, Sept. 16, 1828. For value received of Nathaniel Loring junior, (the plaintiff,) I promise to pay him or his order, one thousand dollars, to be paid out of my estate in one year after my death, without interest."

It appeared that at the time when this note was given, the plaintiff gave a receipt therefor containing the following words :

" Know all men by these presents, that," " in consideration of the sum of $ 1000 by a note of hand, it being my part or full share in my father Nathaniel Loring's estate, both real and personal, said note not to be on interest until one year after the death of my father Nathaniel Loring, I do, therefore, relinquish all my part or full share that I have, or ever may have, in my father Nathaniel Loring's estate, to him, his heirs," &c.

The will of the testator, dated on the 4th of April, 1829, was produced in evidence, in which the testator, after making various bequests, proceeded as follows :

" I give to my son Daniel Loring, one hundred and fifty

dollars, as I have given him a liberal education. Item. I have given to my son Nathaniel Loring junior, one thousand dollars by note, for his full part of my estate." "I also order my executor to pay all the legacies above named, in one year after my death. I also appoint Ellis Sumner executor of this my last will, and being of sound mind and disposing memory, see fit to dispose of my estate as mentioned in the above will written with my own hand."

The defendant relied on the want of consideration as a defence to the note.

The plaintiff offered evidence to show, that there was a consideration for the note in addition to that expressed in the receipt. The defendant objected to the admission of such evidence ; but the court overruled the objection. The plaintiff then introduced as a witness, John J. Loring, who testified that the plaintiff, before the note was made, and after he was of age, had frequently performed services for his father, at his request, and had often let him have money, and that he never knew the father to repay the same.

Other witnesses testified as to declarations of the father in relation to the transaction in question.

It was left to the jury, to find whether there was any thing due to the son from the father, at the date of the note, and if so, whether it formed a part of the consideration of the note. The jury returned a verdict for the plaintiff.

It was agreed that, if the clause in the will relating to the plaintiff, was a legacy, he should recover on the counts for a legacy.

The defendant moved that the verdict might be set aside and a new trial granted, 1. because evidence was improperly admitted ; and 2. because the verdict was against the evidence and against the weight of the evidence.

*Farley*, for the defendant, to the point, that the note was not supported by any valid consideration, and that the defendant might avail himself of this, as a defence, cited *Bowers* v. *Hurd*, 10 Mass. R. 427 ; *Mills* v. *Wyman*, 3 Pick. 207 and cases cited ; and as to the apportionment of a note which is founded on two distinct considerations, *Parish* v. *Stone*, 14 Pick 198.

*O. t. 16th*

Loring
v.
Sumner.

*Walcutt*, for the plaintiff, cited *Parish* v. *Stone*, 14 Pick. 198 ; *Stackpole* v. *Arnold*, 11 Mass. R. 32 ; *Wilkinson* v *Scott*, 17 Mass. R. 257 ; *Rex* v. *Scammonden*, 3 T. R. 474 ; 3 Stark. on Evid. 1272, and cases cited.

*Oct.* 18th.

MORTON J. delivered the opinion of the Court. The doctrines of the case of *Parish* v. *Stone*, 14 Pick. 198, apply directly to the count on the promissory note. The subject was there fully examined and deliberately considered ; and we have no doubt of the soundness of the principles there laid down. They are decisive of this question. A note given for the purpose of settling the promisor's estate, or of equalizing its distribution after his decease, and without other consideration, is *nudum pactum*. But if the promise be founded upon two distinct considerations, the one of which is valid and the other invalid, the promise may be apportioned, and holden to be binding in part and void in part. As far as the note is supported by a good consideration, it may be enforced, and as far as the consideration fails, repudiated, and the holder recover *pro tanto*. When the note is given for two distinct considerations, liquidated by the parties, there can be no difficulty in making the apportionment. But when there are two or more considerations, which combined together, move the promisor to make the note, some of which are valid and others invalid, it is not easy to determine how much of the promise was founded upon a good consideration, and how much upon a gratuitous one. But if in this respect perfect accuracy cannot be attained, the Court will, as in many other cases, resort to the nearest practical approximation to it. And this must be done by referring it to the jury, to determine how much of the promise was founded on a valid consideration, and how much on a gratuity. See *Parish* v. *Stone*, 14 Pick. 198, and the cases there cited.

In this case it was left to the jury to find if there was any thing due to the plaintiff at the date of the note, and if so, whether it formed a part of the consideration of the note. It is probable that this report, which was drawn up and agreed upon by the counsel, is, in some respects, imperfect and defective. But we must form our opinion upon it as it stands. The instruction presents for the consideration of the jury the

Loring
v
Sumner.

two questions above stated ; but does not ask their judgment upon the amount of the legal consideration, and leaves a very strong implication, that if they found these two points for the plaintiff, they were sufficient to support the contract. We cannot be satisfied from the report, that the jury intended to find that the *amount* due to the plaintiff was equal to the whole consideration of the note. But if they did, we are well satisfied that their finding was not only unsupported by, but directly opposed to, all the evidence in the case. The note, the receipt, the will, the promisor's account of the matter as proved by the parol evidence, all show irresistibly, that either a part or the whole of the consideration which moved the parties to make this contract, was the settlement or distribution of the testator's estate, and not the payment of a preëxisting debt. We are, therefore, of opinion, that the verdict cannot be sustained upon the note.

But the plaintiff's writ contains counts upon a legacy as well as the note, and it was agreed by the parties, that if there was a legacy in the will to the plaintiff, he should recover on these counts. By this agreement the Court may render judgment on the verdict, provided, upon a true construction of the will, the plaintiff is entitled to a legacy of a thousand dollars, the amount claimed upon the note and the legacy and the time of the payment of both, being the same.

The will was written by the testator, who, from the instrument itself, appears to have been an illiterate man ; and it certainly is very inartificially drawn. There are no instruments more frequently written by unpractised hands, or in which less formality or precision is required, than wills. In whatever language they may be couched or however incorrectly and bunglingly drawn, if they are duly executed and the intention of the testator can be ascertained, they are valid and effectual to pass property of any kind or amount. Great allowance should be made for the ignorance of testators and the incorrectness of the language used by them. Uneducated men may make wills as well as others. If, upon the inspection of the whole instrument, duly regarding the situation and intelligence of the testator, his intentions can be satisfactorily ascertained, they must be carried into execution. *Richardson* v. *Noyes,* 2

9 *

Mass. R. 58 ; *Baddeley* v. *Leppingwell*, 3 Burr. 1541 ; *Frogmorton* v. *Holyday*, *Ibid.* 1625. It is the expressed intention or volition of the testator in relation to the *post mortem* disposition of his property, which constitutes a will.

The testator, after several other legacies, uses these words. "I have given to my son, Nathaniel Loring junior, one thousand dollars, by note, for his full part of my estate." The note before referred to, was made before the will, and was then in existence. If the above language, however ill chosen, or inappropriate to the object, is satisfactory evidence of the intention of the testator, that the amount of the note should be paid out of his estate, to the plaintiff, it is a valid legacy. *Thellusson* v. *Woodford*, 11 Ves. 148. Now, although it may not be easy to form arguments upon the literal construction of such language, or to draw inferences from the grammatical structure of the sentences, yet we think no intelligent person can read this clause without at once learning from it, that the testator intended to declare his volition or determination that his executor should pay this note.

Subsequent clauses in the will have some tendency to confirm this construction. The testator says : "I also order my executor to pay all the legacies above named, in one year after my death." And again, in conclusion, he says, I "see fit to dispose of my estate as mentioned in the above will," viz., as we understand it, that among other things one thousand dollars be paid to the plaintiff.

There is no doubt that a valid bequest or devise may be made by reference to objects and documents, not incorporated in or annexed to the will. Powell on Dev. 22, 50, and cases cited ; *Jackson* v. *Babcock*, 12 Johns. R. 390 ; *Habersham* v. *Vincent*, 2 Ves. jun. 228. A person may, by his will, revive a note barred by the statute of limitations, or give effect to an invalid instrument. There are several cases to this effect in Vesey's Reports. *I will that a certain note be paid*, or *that a certain promise be performed*, would be a valid legacy of the amount of the note or of the thing promised to be done, although the note or promise were invalid. It seems to us, that the language of this will is equivalent to saying, *I will that this note of one thousand dollars, given to Nathaniel Loring junior,*

*be paid.* And we can entertain no doubt that such would be a valid legacy. See *Bibin* v. *Walker*, Ambl. 661.

There is every reason to suppose, that the testator believed that the note given by him to his son was obligatory, and that the receipt or discharge given by the son was a binding acquittance of all claims which he might have as an heir of his father. In this state of things, the testator could have no motive to mention this son or this transaction, but to recognize and give effect to this arrangement, and to express his desire and determina-tion, that the money mentioned in it should be paid.

The language used in the will, is only the evidence of the intention of the testator; and however incorrect, imperfect, or ungrammatical the language may be, as far as it furnishes satisfactory evidence of the testator's intention, that must prevail. And for the purpose of carrying into effect this intention, the Court will supply or reject particular words, or substitute one word for another. *Brownswood* v. *Edwards*, 2 Ves. sen. 248. Thus, in almost innumerable cases, *or* has been substituted for *and*, and *and* for *or*. Sometimes, even negative words are substituted for affirmative ones, and *vice versâ*. *Maberly* v. *Strode*, 3 Ves. 450; *Bell* v. *Phyn*, 7 Ves. 458. So words in the *past* are changed to those in the *future*, and the reverse. I recollect the case of a German, in London, with a very imperfect knowledge of the English language, who wrote his own will, and made sad work with the grammar of the language; yet the court, being satisfied that they understood his meaning, carried into effect his intention as fully as if the will had been written in good English. *Wilde* v. *Holtzmeyer*, 5 Ves. 810. There is also a case in Vesey, where the court went a great way, in changing a particular phrase, to execute the general intention of the testator. The father bequeathed to his daughter £3500, which, he added, with £6000 she was entitled to by his marriage settlement, and £500 given to her by her grandfather, would make her portion £10,000. It turned out that the sum in the marriage settlement was £5000, instead of £6000 as named in the will, and that to make the daughter's portion £10,000, would require £4500. The court being satisfied that the leading intention was to make up the portion to £10,000, held, that the will gave a legacy of £4500, in-

Loring
v.
Sumner.

stead of the £3500 expressly named. *Clark* v. *Guise*, 2 Ves. sen. 617. See *Milner* v. *Milner*, 1 Ves. sen. 106.

In the case before us the testator says, *I give to my son Daniel, $150, as I have given him a liberal education.* Now if the father had taken notes of this son, for the money advanced for his education, it can hardly be doubted, that this would be a remission of the notes or a legacy to the amount of them.

Now, although we cannot doubt that the testator supposed that this note was obligatory, and that it was unnecessary to make a testamentary provision for the plaintiff, yet, upon the whole, the testator, by his will, also manifested an intention or determination, that the amount should be paid out of his estate. And although the testator might not suppose that there would be a necessity to resort to his will to enforce it, yet we can see no good reason why this determination thus manifested should not be carried into execution. We are therefore of opinion, that this is a valid legacy to the plaintiff for $1000, payable at the same time with the note. The verdict being for the exact amount due on the legacy and being a general verdict on all the counts, though doubtless founded on the note, is well sustained by the legacy.

*Judgment on the verdict.*